5-1428 Rosebud v. Adobe Systems Mr. Chen, please proceed Good morning, Your Honors. May it please the Court. I'd like to focus on just two issues today. The first issue is the statutory interpretation of Section 154D and specifically whether actual notice under that section requires an affirmative act by the patentee. The second issue I'd like to discuss is... Did the District Court require an affirmative act by the patentee? The District Court did not. The District Court agrees with Rosebud's interpretation of that statute. And just to give the Court a roadmap, the second issue I'd like to talk about is the sufficiency of Rosebud's evidence to show that actual notice. So turning to the first issue, as Your Honor pointed out, the District Court actually agreed with Rosebud's interpretation of the statute. When analyzing statutory interpretation, as the Court knows, the first step is to look at the language of the statute and see if it's plain and unambiguous. And here it's exactly that. Section 154D unambiguously focuses on the status of the alleged infringer. It doesn't focus on anything that the patentee does, and in fact the relevant portion doesn't mention the patentee at all. So of course it doesn't require anything of the patentee. Adobe wants to look at the legislative history to support its interpretation, but because the language is so unambiguous, it's inappropriate to even look at the history. Even if the Court looks at it, it actually supports Rosebud's interpretation. In Adobe's brief, they cite to a specific portion of the legislative history. Specifically in the last sentence, the history talks about two requirements. The first requirement is that the patent, the published applicant, explain what acts are regarded as giving rise to provisional rights. And the second requirement is, of course, the affirmative act of the patentee to give notice. You agreed constructive knowledge is not enough, correct? I agree, yes. So tell me why or where in this evidence you've raised a question of fact about actual knowledge, assuming that we accept the interpretation given below and the interpretation that you're arguing in favor of. Tell me where you've provided proof sufficient to survive summary judgment. Sure. Yes, this goes to what we felt was the District Court's error in finding that what we did show was not sufficient. Specifically, in our brief, we relied on the Syncor case. We feel that the evidence that we presented was very similar to what was presented in that case. Specifically, we showed that Adobe had knowledge of a predecessor patent, and specifically factually, During a meeting in 2002, Rosebud told Adobe executives about its first patent application. And then when that patent issued in 2008, we showed the e-mails where Rosebud sent Adobe a notice that we got this patent. And in 2009, a similar e-mail was sent. And, of course, in 2010, the first lawsuit in this series of lawsuits was filed, Rosebud versus Adobe. When did the publication occur in this case? Was that 2011? Yes, the publication of the application that led to the asserted patent in this case, which is the third case. So that was several years later? Yes, but shown in Syncor, for example, there are e-mails that were used as circumstantial evidence that came several years before the relevant patent. And so that can serve as circumstantial evidence. Do you have any evidence that's at all contemporaneous with the publication date? I don't believe we have that evidence at this time, but discovery is still at that place. Well, let's set that aside. I mean, you had what you had, and whether you properly preserved your discovery issues is a different question. But at best, it seems to me that there's a couple-year gap between the latest evidence you point to, none of which has to deal with this application or the publication and the prior course of dealings. And why isn't that just a suggestion that Adobe and Rosebud had been in competition, knew about some patents? And then the best inference we can make is that a good lawyer might have told them to go look for this evidence, but there's no indication that anybody actually did. Yes, I mean, there is a gap, but I guess as similar in Syncor, the defendants similarly argue that e-mail evidence that was produced could not act as circumstantial evidence because it was so far before the relevant date. And I think the same reasoning would apply here. Yes, the e-mails are not from 2011, but they still act as circumstantial evidence of what? But in Syncor, it says the defendants admitted to consistently monitoring Syncor's patents. We don't have anything like that here. You have two e-mails in 2008 and 2009 that indicate knowledge of your products. And so you sue them for infringement of parent patents or related patents, but you don't have anything like in Syncor where defendants admitted to monitoring Syncor patents. That's a huge difference between Syncor and this case because you don't have any evidence that they were monitoring your patents and certainly not an admission by them. All you have is the fact that you had to know at least about a couple of the parent patents because you sued them on them. Right, so two responses to that. First, we do have evidence that they were monitoring Rosebud's copyrights. And second, not all the defendants in Syncor were able to, not all the defendants admitted that they monitored the products of Syncor. Specifically, I believe it's on page five of the district court opinion where it talks about a defendant called Delta, and the only evidence that was presented for Delta were e-mails showing that the defendant followed products and that they had knowledge of a predecessor patent. Well, you may be right about the facts, but unfortunately that's not what the Federal Circuit opinion says. And to the extent that I read the Federal Circuit opinion for establishing law about when actual knowledge is sufficiently established to survive a question of fact type analysis, it says defendants. It doesn't say any of them didn't. It says all defendants admitted to monitoring. And so unfortunately, whether that fact as you articulated is true or not, and it was brought out in the district court case, that fact is not articulated in the Federal Circuit opinion. And instead, this principle of law is based upon a finding by our court, right or wrong, that defendants had this knowledge and were consistently doing this. So you might be right about the true facts of that case, but that's not what guides the law. What guides the law is what's discussed in the Federal Circuit opinion. Yes, well, we don't have an admission from the defendants because we haven't been able to take any depositions. All we have is the evidence. Syncor also shows that at least one of the defendants actually possessed on their own the 190 patent prior to the suit being filed. So do you have anything like that here? Do you have anything to show that they possessed the patent that ultimately issued from the application prior to you suing them or making them aware of it? No, we don't have that. I mean, essentially, you're asking us to stack an inference on top of an inference, that because of the course of litigation and the competitors, you can infer that they would have monitored Rosebud's patent activity, and because they would have monitored it, you can infer that they would have discovered that. But that doesn't seem to be enough to show actual knowledge. It seems to be enough to show, at best, that there might have been, if constructive knowledge was okay, maybe that would meet that standard. But it's not even clear whether it would meet that standard. You don't have anything that suggests they had actual knowledge. Well, we have the evidence that we presented in the brief, and I know Your Honor recognized that you do have to make an inference. You have to make two inferences. That's the problem. I mean, if you had some evidence, like in Syncor, that the company routinely monitored Rosebud's patent applications, then you could make an inference, and a reasonable one probably, that they would have discovered this application. But you don't even have any evidence that shows that they continually monitored it. You just want us to make that inference because of the course of dealings. There's no evidence supporting that inference. Well, we think the evidence we presented does show that they consistently followed Rosebud's product, specifically the emails. But those emails are two emails from 2008 and 2009, and even if those established that they were following Rosebud's products in 2008 and 2009, there's a long time between that and when this patent application issued, and there's nothing. There's like radio silence in terms of evidence that would establish an inference that they were consistently following these products. Right, Your Honor. I'm not talking about the 2008, 2009 emails. Those were just, I'm talking about the internal Adobe emails that we pointed to, where they talk about downloading and testing out Rosebud software and being concerned about copyright infringement, and also even trying to emulate some of Rosebud's software features. I mean, the internal Adobe emails are what mainly we're relying on to show the following of Rosebud's products. And what are the dates on those? Those dates were also before the published application. I assume they're a little later than 2008 and 2009. Is that what you're? If you want to find them on rebuttal, you can do that. 2007, it looks like. I want to correct one thing I said. My clerk pointed out to me that in SynCorp, it actually says some defendants admitted to consistently monitoring. So in your favor, you are, in fact, correct, and I misspoke. Thank you, Your Honor, yes. Some defendants, not all of them. The court didn't find all of them did. Right. Yeah, and I think, you know, you mentioned that one of the defendants did, in fact, have possession of the pen, and we recognize that, but, right, I think the Federal Circuit affirmed with respect to all defendants, and, of course, if only one defendant had actual possession of it, that shouldn't. Well, then maybe we affirmed improperly to the people that didn't have that evidence, but you don't have that evidence either. Correct, and so that's why I think it's the same situation. Well, maybe we were wrong there. I think the reasoning in SynCorp was sound. Maybe our reasoning was based on the evidence showing actual possession and that some defendants had a specific duty to monitor. So the affirm on those people was okay, and the other people shouldn't have been affirmed as to. It doesn't matter. We don't need to argue about the evidence. You have what you have. Mr. Chen, would you like to save the remainder of your time for rebuttal, or is there anything else you'd like to add right now? I think that's all I have right now. I'll save the rest of my time for rebuttal. Perfect. Thank you. Mr. Berta. Thank you, Your Honors. Mike Berta for Adobe. May it please the Court. There are two issues here. The first is the issue of statutory interpretation, and then, however, I'm not certain that this Court would need to resolve that issue of statutory interpretation because even under the district court's understanding of what the term actual notice requires, the district court was correct that there is no evidence sufficient to support a finding by a reasonable jury of actual notice assuming that it essentially means actual knowledge by Adobe of the published patent application. And so obviously we take the position that actual notice requires something more, but setting that aside for the moment, on the issue of actual notice and saying that that is knowledge, that conclusion directly follows from the evidence presented. What they relied upon was knowledge of a prior patent standing alone and the knowledge of the specification of that patent that would inform someone of what potential claims could come out of the patent application. Well, it wasn't just knowledge of a prior patent. It was being sued on that prior patent, right? Because there's certainly a huge difference between a company knowing about a single patent and what behavior a reasonable company and reasonable attorneys would take when they were sued on that patent. So, yeah, I agree. There's two different facts. Huge difference. There are two different arguments that they ran, and I think that there are distinctions between them. One is the fact of the knowledge of the specification, and to the extent that the court is indicating that that's not sufficient, I agree. The second piece is the fact of the prior lawsuits. Now, I realize this bleeds into a constructive notion, so don't get too worried when I ask you the following question, but wouldn't any good attorney, if you were sued on a patent, wouldn't you immediately, probably the first thing, maybe the first thing you'd do is read the patent, but the second thing you would do would be to look to see if there's any related patents? I mean, isn't that something almost every reasonable attorney would do pretty quickly after being informed about the lawsuit? So I think there's two answers to that question. The first is that is something that someone certainly could do, and maybe someone should argue should do, but that does not lead to a reasonable inference that more than likely not, in fact. Okay, I started by saying that most likely bleeds into constructive knowledge, so don't get scared. But when you say could do, that's a BS answer. I mean, are you telling me that you'll, you, you tell me you, and we will consider you a better than average attorney, okay? We will not say you're like the average attorney, so you don't have to worry.  But you're not going to immediately look at the history and, you know, related applications of this patent. Client brings you, we've just been sued on this patent. How quickly after that? Let me just answer honestly, which is probably the right course. Always, always good. Always good. It depends on the situation that, yes, when you get a patent in, you try and figure out who the plaintiff is. If it's a serious case, what kind of resources you're going to expend on it. Then you look at what the patent says. You probably look to see if there are prior patents. I'm not certain that until you're fairly deep in the process, you would look for a non-issued published patent application that was currently just pending. Seriously? Because if you're going to negotiate a settlement with these people to get your client out from under this, aren't you going to want to ensure that you got everything wrapped up in that settlement? I think that's true, Your Honor, but that, again, goes to the facts of this case. The history of the litigation here was the first patent filed in May of 2010 voluntarily dismissed in November of 2010. That says nothing about knowledge of a patent application that didn't exist until December of 2011. But the second lawsuit was later in time. The second lawsuit was filed in September of 2012. Here the unrebutted and unchallenged facts are that Adobe's product had been shut down by the beginning of January of 2013. So it wasn't the course of the second litigation. It wasn't the resolution of the second litigation. A jury would have to find that it was more likely than not that someone between September and the beginning of January, so a space of a little over three months, had to have and thus did look up a published patent application that existed at that time. And that is not a reasonable inference here. So you're saying that even if in normal course when your client is sued, you would look, you wouldn't keep looking every five minutes, and you would have had to look in this precise and very, very narrow period of time near the end of the litigation before you would even have found it. No, you would have had to actually look at the very beginning of the litigation because the litigation was filed in September of 2012. Because the product was shut down by January of 2013, after that it doesn't matter who knew what because the product was shut down before the patent ever even issued. And so the balance of the second litigation was during a time period in which there still can be no provisional rights because the product was unchallengedly not usable past January, I think it's 10th or 16th of 2013. And the second lawsuit was filed in September of 2012. And so a jury here would have to conclude that on the mere fact of the filing of the second litigation, that means that within three months someone had to look up and then find and then locate and know of a published patent application that hadn't issued as a patent yet. And that is not an available reasonable inference. Over the entire course of the case, let's say that second case got to claim construction, which it never even did because there was this motion to dismiss for failure to prosecute, then maybe at some point someone will have looked up prosecution history and made an argument from that, which potentially in some case could be some evidence that perhaps combined with others could lead to an inference that you actually knew about the panoply of patents and patent applications that they have. But again, that never happened in case two. It certainly didn't happen in the first three months. Hypothetically, the publication was not in 2011. It was in 2009. And so it was around the same time as these emails. It was prior to the first suit and the like. If that's the case, if that's the factual case, constrain the facts most favorably to your friend, wouldn't that create a triable issue of fact there on actual knowledge? Answering frankly, the answer is still no on this evidence just shifting the time period. Because when you look, it is a total of eight emails from 2007 that then goes silent as of February of 2009. But if one of those emails says after this is published, go look and see what Rosebud has pending or has out there, then doesn't that create a triable issue of fact? So that didn't happen in this case. There's no reference to other patents ever. If there is an email internal to Adobe that says, we just got notice of this patent by Rosebud. We should go ahead and take a look at other things. I think that that is circumstantial evidence that would be a far closer question on a triable issue of fact. I'd have to think about it a lot. But I do think that there is things that are circumstantial evidence from which inferences can be drawn. That might be closer to Syncor. I think it is closer to Syncor. In Syncor, the other issue there is that as it was found, they marked everything. They marked it on their products and their data sheets. And the defendants looked at the plaintiff's products and the plaintiff's data sheets. And so they're marked there. And defendants are looking at the data sheets. I don't think that's a particular leap. Here, there is nothing like that. First of all, this was only a patent application, and no one marks those, although there's some reference in the reply to them now. Wait, I don't know that you have the facts of Syncor, right? And maybe I misunderstood you. But in Syncor, it says, defendants possessed data sheets or products marked with Syncor's earlier patents, including the 417, to which this claim is prior. And I probably shouldn't have done this, given your earlier admonition. In the lower court's opinion, it says that there was testimony that the plaintiff marked its patents upon issuance on its data sheets and on its products, and that defendants had access to the plaintiff's data sheets and products. I'm sorry, that is from the lower court opinion, not from the Federal Circuit's review of what was in the lower court's opinion. So you have a set of emails here from 2007 to 2009. And it's not just that there's only those emails. It's that the emails go silent by February of 2009, and not another peep is ever heard about Rosebud. Apart from that, there are two lawsuits. But there was a lawsuit in May of 2010 that was voluntarily dismissed in November of 2011, which means by the time the patent publication was published by Rosebud in December of 2011, that's about a year after the case, almost three years after anyone's ever mentioned anything about Rosebud. And so at that point, there just is no available inference to be made. Do you also think that maybe there's a difference between if you're drawing inferences between published patents and published applications? Because Syncor didn't involve an application, right? And I do think that that, for better or for worse, I think that it's... Certainly people monitor patents more than they monitor applications because claims scope can change considerably through the application. I agree. And to the extent... I don't mean to bring the practical too much into this, but I think 154D is somewhat exceptional, somewhat unusual. And I believe that most people who are looking at potential infringement issues look to published patents, not patent applications, because I'm not certain that this is an issue that comes up particularly that often. And so I do think there's a big difference. People mark their products with their patents, generally speaking. And that's what people look at to determine whether or not to avoid infringement for willfulness, for purposes of the issue of indirect infringement and other sorts of issues. It matters that it is a patent, not a patent application. Do you want to briefly move on and tell us about your statutory interpretation argument? I do, in the sense that these sorts of discussions about circumstantial evidence and inferences that can be drawn from them can get... I don't believe in this case, but could get somewhat tangled in some cases. And when you look at the language of 154D, the words used are actual notice. Now, to me, actual notice is a different word than notice, and it's a different word than actual knowledge. And you have to decide that actual notice means actual knowledge in order to bind what the district court did to say that it doesn't require an affirmative act. The statutes and the case law on the word... Yeah, but the statute doesn't use the word knowledge anywhere, right? Correct. So it's not... Because that would be a much stronger case for you. If the statute used knowledge, then it would be a stronger case for you that when they say actual notice as opposed to actual knowledge, they mean something different than actual knowledge. So the statute doesn't use the word knowledge anywhere as a distinction with actual notice. I think that's correct, but the statute also doesn't say that there has to be actual knowledge. It says there has to be actual notice, and notice is a different word than knowledge and has with it inherently a meaning of an action being given. I just don't... But it doesn't say who the action is by, right? Well, it doesn't. And so I guess the best that one can get... So here's the thing. On actual notice, I believe there are different statutes that have been interpreted in different ways. And so the best you can come to... The copyright statute has the term actual notice. It has been held to require affirmative act. There's this plant protection... But in that case, I don't know that statute, but in that case, does it use the words or refer to the copyright holder or does it refer to the accused infringer? Because the problem in 154 is it's not phrased in terms of the patentee. It's phrased in terms of the any person as opposed to the marking statute, which you refer to, which is phrased in terms of the patentee having an obligation. So I would disagree with that in part in that the marking statute does talk about what the patentee has to do with respect to marking. But by the time you get to the notice provisions, it's all in the passive voice. It says... I don't agree with that interpretation at all, but I think there's a distinction. But is the copyright one that you're saying is an example? Does it phrase in terms of what the copyright holder has to do? So it says... What it says, and I can't quote it because I didn't write it down and I apologize, but it is in 17 U.S.C. 109. It says upon actual notice or something like that. So I don't think it expressly says, but when you follow the chain of the statute, it requires an affirmative act. Point being that I'm not certain that the term actual notice or even the use of the passive voice is something that is clear from the face of the statute as a matter of statutory construction. And so then the next best place that one could look is the legislative history. No, the best place you look is what is the definition of actual notice. I mean, we do this all day long, right? Interpret statutes. And so all of the definitions include knowledge. Every one of them, including the ones you quoted to us that you then left out the very next sentence of which that says knowledge, like the Black's Law Dictionary, for example, which says knowledge satisfies the actual notice, actual knowledge. And you left that sentence out of your definition, and it's the very next sentence in the definition. So I apologize for that. I don't specifically recall that. I do know that Blacks, at least at the beginning, talks about active. My clerk just said American jurisprudence, not Black's Law Dictionary. Yeah, that's right. The American jurisprudence? I don't recall leaving that out, but I do know that the two definitions are slightly different. The Black's Law Dictionary requires an act to be done on the person. I think the ANJA one is a little different. But how does your definition make any sense? Suppose that every person in the company has the patent sitting on their desk, and in fact they've marked it to high heaven, right? You know, all these things. And they're exchanging emails about how are we going to get around this patent. But it wasn't given to them by the patentee. You're going to say they don't have actual notice of the patent? Absolutely. Absolutely? That's exactly how 287 works. But we're not talking about 287, which is phrased in terms of what the patentee has to do. We're talking about 154, which is phrased in terms of a person having actual notice. I hear what you have said. My belief is that 287 uses the passive voice and says proof that the infringer was notified of the infringement. So the statute here says had actual notice of the published patent application. Yes. But that's all it says. That's correct. It doesn't say who has to provide the notice. I agree with you that most of the time it would be the patent owner who would provide that notice. But it's not limited. It doesn't say who has to provide the notice. So I don't see how we can read that in. I understand. And my time is up. I thank the panel. He wants to sit down and not answer questions. I'm sorry. I do want to answer your question. I don't know. I don't want to impose upon the court's time. I totally apologize. Yes. I agree that it is written in the passive voice. But it was quite clear what the intention was. And this was passed at a time where how 287 was being read. And that's what the commentators were saying at the time. I don't think any of that's binding. But I do think the legislative history for something that, by the mere use of the passive voice, makes it at best ambiguous is a place to go. If the sentence says, a person who has actual knowledge is subject to intervening rights, that's very clear, isn't it? Yes. Well, isn't that what this says? It doesn't because the actual notice is a different word than actual knowledge. Well, no. Sorry, I misspoke. A person who has actual notice. You're saying notice implies that it's being given from somebody. Okay. That's fine. Wait. No, you don't get to go yet. So the Copyright Act apparently, you told us, uses the word actual notice and defines it as notice from the copyright owner. But the Copyright Act actually expressly says that. It says. It does. Wait, it does? But you didn't tell Judge Hughes that when he was asking you about it. It expressly says the notice has to come from the owner of the copyright. Yeah, I couldn't remember the actual language. I agree. But that's the term actual notice there. I mean, that cuts against your argument. I mean, if Congress knows how to use it. I was not arguing that copyright was an arrogance. It's okay. We don't need to keep you up here. You have a pretty good argument on the facts without your legal argument. Okay. Judge, Mr. Chen, please, you have your rebuttal time. Please proceed. Thank you, Your Honor. I took a look at the Adobe internal e-mails during counsel's argument. It looks like the latest one was in 2009, so we're talking about two years from the last e-mail that we had until the published application. But again, in SINGCOR, the defendants similarly made an argument that evidence before the issuance of a patent can't satisfy the sufficient evidence standard, but the court found that it did. I think with respect to the second case, counsel mentioned that somebody would have to look up related patents at the very beginning of the second lawsuit. And I think in our brief we cited to a practice guide that said, in general, at the very beginning of the case you should start to look at related patents. When you're looking at actual notice versus constructive notice, how much weight should we give that somebody should have looked up the related patents? Right. So I think it's a bit confusing because I think there is quite a bit of overlap between constructive notice and what could be construed as circumstantial evidence of actual notice. I think it depends on the facts. But here, I think given the history of the parties, the court should give greater weight to it. I mean, these parties have known each other since 2002. There have been two prior lawsuits filed. And essentially what they're saying is that, well, 2014, that's the first time we learned of Rosebud's patents. But they've known about it for over a decade. I guess the final point that I have is I think counsel tried to distinguish the SINGCOR case based on marking. But my understanding of the facts in SINGCOR is that the fact that products were marked was just to show knowledge of predecessor patents. And here, I don't think there's a dispute that Adobe knew of the predecessor patents. So unless the court has any other questions for me, that's all I have. Thank you, Mr. Chen. Thank both counsel for their argument. The case is taken under submission.